UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LOCAL 1992 PENSION FUND and
UNITED EMPLOYEES HEALTH PLAN

                         Plaintiffs,

                  -against-

A-G ELECTRICAL SUPPLY CO. INC., and
PETER RAY

                       Defendants.
-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

21-CV-03441 (JMA) (JMW)

**A P P E A R A N C E S:**

Sheri Dorothy Preece, Esq.
**McCarthy & Preece, PLLC**
118 North Bedford Road, Ste 100
Mount Kisco, NY 10549
*Attorney for Plaintiffs*

*No Appearance by Defendants*

**WICKS,** Magistrate Judge:

      Plaintiffs Local 1992 Pension Fund ("Pension Fund") and United Employees Health Plan

("Health Fund") commenced this action against A-G Electrical Supply Co. ("A-G Electrical")

and its President, Peter Ray, on June 18, 2021, asserting claims of breach of a Collective

Bargaining Agreement ("CBA") and seeking to enforce the requirements of the Employee

Retirement Income Security Act ("ERISA"), §515, 29 U.S.C. § 1145, and §502, 28 U.S.C.

§1132, *et seq.*, and the Labor-Management Relations Act ("LMRA"), § 301, 29 U.S.C. § 185.

(DE 1.)  Specifically, Plaintiffs asserts three causes of action: (1) unpaid contributions to the

Pension Fund in violation of  ERISA § 515, 29 U.S.C. § 1145, and § 502, 29 U.S.C. § 1132, *et*

*seq.*; (2) unpaid withdrawal liability to the Pension Fund pursuant to ERISA § 502(g)(2) and

4201(b), 29 U.S.C. § 1132(g)(2) and 1451(b); and (3) unpaid contributions to the Health Fund in violation of ERISA § 515, 29 U.S.C. § 1145, and § 502, 28 U.S.C. § 1132, *et seq*. (DE 1 at ¶¶ 33, 38, 41, 48, 54.)

On referral from the Honorable Joan M. Azrack is Plaintiffs' unopposed motion for default judgment (DE 15) for a Report and Recommendation (Electronic Order dated January 11, 2023.) Plaintiffs seek the following relief: (1) $264,923.28 to be paid to the Pension Fund for unpaid contributions, unpaid withdrawal liability, liquidated damages, and interest; (2) $169,530.60 to be paid to the Health Fund for unpaid contributions, liquidated damages, and interest; and (3) $6,517.50, for attorneys' fees and costs related to this action. (DE 15-3.)

For the reasons that follow, the undersigned respectfully recommends the instant motion (DE 15) be granted in part and denied in part. The motion should be denied as to Defendant Peter Ray with leave to renew given Plaintiffs' continued failure to comply with the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. App. § 521 solely as to Ray. The motion be granted as to A-G Electrical as follows: (1) the Health Fund be awarded the amount of $169,530.60 for delinquent contributions, liquidated damages, and interest; (2) the Pension Fund be awarded $264,923.28 for delinquent contributions, withdrawal liability, liquidated damages, and interest; and (3) the Health Fund and the Pension fund collectively be awarded $6,517.50 for attorneys' fees and costs.

## **BACKGROUND**

### A. *Factual Background*

The following facts are taken from Plaintiffs' complaint unless otherwise noted. (DE 1.) Plaintiffs are both "multiemployer" pension benefit plans that provide benefits to eligible employees and their dependents. (DE 1 at ¶¶ 6-7, 21.) The Pension Fund and the Health Fund

2

were each established pursuant to written agreements and declarations of trust ("Trust Indentures"). (DE 1 at ¶¶ 7, 23.) A-G Electrical is a domestic corporation with its principal place of business in New York. (DE 1 at ¶ 3.) Peter Ray is the president as well as the sole shareholder and operator of A-G Electrical. (DE 1 at ¶ 5.) Peter Ray is a resident of New York. (*Id.*) Plaintiffs allege that A-G Electrical is required to make contributions to the plans on the employees' behalf pursuant to the CBA between A-G Electrical and Local 1922 IBEW (the "Union"). (DE 1 at ¶¶ 10, 24.) The CBA is dated September 1, 2011, through February 28, 2013, and, per its terms, automatically renews every year unless either party gave notice of termination or modification. (DE 1 at ¶¶ 10, 31.) No such notice has been given by any party. (DE 1 at ¶ 10.)

On November 21, 2018, A-G Electrical and the Pension Fund entered into a Settlement Agreement by which A-G Electrical was to pay $4,140.72 in unpaid past contributions, but it defaulted on these payments resulting in an outstanding balance of $3,510.38. (DE 1 at ¶ 12.) In March 2020, A-G Electrical further failed to pay the Pension Fund $449.54 in appropriate contributions under the terms of the CBA and ERISA 29 U.S.C. § 1145. (DE 1 at ¶ 13.) A-G Electrical then withdrew from the Pension Fund on or about June 1, 2020, by "permanently ceasing all covered operations under the Pension Fund." (DE 1 at ¶ 14.)

The Pension Fund subsequently asserted that it was entitled to withdrawal liability from A-G Electrical under ERISA § 4201(a), 29 U.S.C. § 1381(a). (DE 1 at ¶ 14.) The Pension Fund sent a demand letter to A-G Electrical for withdrawal liability pursuant to ERISA § 4219(b), 29 U.S.C. § 1399(b), but A-G Electrical failed to make timely payment. (DE 1 at ¶ 17.) On June 1, 2020, a second letter was sent to A-G Electrical for unpaid contributions to the Pension Fund and Health Fund, and unpaid withdrawal liability to the Pension Fund. (DE 1 at ¶ 19.)

3

Similarly, A-G Electrical and the Health Fund entered into a Settlement Agreement for delinquent contributions in the amount of $72,967.56.  (DE 1 at ¶ 25.)  A-G Electrical defaulted on this Settlement Agreement as well, leaving an outstanding balance of $61,869.76.  (*Id.*)  Further, Plaintiffs allege that A-G Electrical failed to make contributions to the Health Fund required by the CBA in the amount of $82,697.86.  (*Id.* at ¶ 26.)  Additionally, the Health Fund entered into a Participation Agreement with the Defendants to provide benefits to non-bargaining unit members, including Ray.  (*Id.* at ¶ 27.)  Plaintiffs allege that A-G Electrical failed to make contributions from January 2020 through March 2020 in accordance with the CBA in the amount of $12,496.86 and in accordance with the Participation Agreement in the amount of $8,331.24.  (DE 1 at ¶ 29.)

## B. *Procedural History*

The Complaint was filed on June 18, 2021 (DE 1), and a Summons was issued as to Defendants on June 22, 2021.  (DE 6.)  Ray was served on July 6, 2021 (DE 8), and A-G Electrical was served on July 13, 2021.  (DE 9.)  Defendants' respective answers were due July 27 and August 3, 2021.  (DE 8; DE 9.)  Defendants failed to answer or otherwise respond to the complaint.  The Court held a Status Conference on September 28, 2021, at which Defendants failed to appear.  (DE 11.)

On November 8, 2021, the Court issued an order to show cause directing Plaintiffs' counsel to request a certificate of default, or otherwise show cause, in writing, as to why the Court should not issue a Report and Recommendation to the presiding District Judge that this matter be dismissed pursuant to Fed. R. Civ. P. 41 (b) for failure to prosecute.  (Electronic Order dated November 8, 2021.)  Plaintiffs requested a certificate of default on November 9, 2021 (DE 12), which was entered by the Clerk of the Court on November 9, 2021.  (DE 13.)  Plaintiffs then

4

filed a motion for default judgment on January 10, 2022 (DE 14), which was denied with leave to renew for, *inter alia*, failure to include a memorandum of law and a non-military affidavit as to Ray.  (Electronic Order dated August 11, 2022.)  Plaintiffs filed their renewed motion for default judgment (DE 15) on December 21, 2022, which is currently before the Court.

## **LEGAL STANDARD**

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55.  First, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action.  *See* Fed. R. Civ. P. 55(a); *see also* E.D.N.Y. Local R. 55.2.  After the clerk's certificate of default is issued and posted on the docket, a party may apply for entry of a default judgment.  Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local R. 55.2(b).  The decision to grant a motion for default is left to the sound discretion of the district court.  *No Limit Auto Enterprises, Inc. v. No Limit Auto Body, Inc.*, No. 2-1CV-4755 (AMD)(JMW), 2022 WL 18399477, at *2 (E.D.N.Y. Dec. 12, 2022), *report and recommendation adopted*, 2023 WL 348271 (E.D.N.Y. Jan. 19, 2023).

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878 (RJD)(JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (finding that a default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true). "Where damages are susceptible to simple mathematical calculation and the plaintiff provides a 'sufficient basis from which to evaluate the fairness' of the requested damages, no evidentiary hearing is necessary." *Euro Pac. Capital Inc. v. Bohai Pharm. Grp., Inc.*, No. 15-CV-4410

(VM), 2018 WL 1596192, at *5 (S.D.N.Y. Mar. 28, 2018) (quoting *Am. Jewish Comm.*, 2016 WL 3365313, at *4).

However, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims.  *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (alterations omitted)). The court must therefore ensure that (1) Plaintiffs satisfied all the required procedural steps in moving for default judgment, *see* Local Civ. R. 55.2; and that (2) Plaintiffs' allegations, when accepted as true, establish liability as a matter of law, *see Finkel*, 577 F.3d at 84, and that (3) Plaintiffs' request for damages is adequately supported.

## DISCUSSION

### A.  *Procedural Compliance*

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion.  E.D.N.Y. Local R. 7.1(a)(1)-(3).  Local Civil Rule 55.2 requires that a party moving for default judgment append to its application the Clerk's certificate of default, a copy of the claim to which no response has been made, a proposed form of default judgment, and that all papers submitted to the Court under Rule 55.2(b) be mailed to the party against whom a default is sought at the last known address of such party with proof of mailing filed with the Court.  E.D.N.Y. Local R. 55.2(b)-(c).  Plaintiffs renewed motion for default judgment (DE 15) includes a proposed judgment (DE 15-3), a memorandum of law (DE 15-1), an unsworn declaration in support (DE 15-2) that affirms that Defendant Peter Ray is not in the military, a

copy of the complaint & Exhibits (DE 15-20), the certificate of default as to Defendants entered

by the Court on November 9, 2021 (DE 15-5), and the affidavit of service confirming service of

the motion for default judgment on Defendants.  (DE 15–16.)

Here, the Court denied Plaintiffs' first motion for default judgment for a myriad of

reasons including the failure to comply with the SCRA, and to include a memorandum of law

and a copy of the complaint.  (Electronic Order dated August 11, 2022.)  The Court expressly

noted that "Plaintiffs have failed to provide a nonmilitary affidavit pertaining to the individual

Defendant, Peter Ray, which is required by the Servicemembers Civil Relief Act, 50 U.S.C. App.

§ 521."  (*Id*.)  Further, the Court "cautioned [Plaintiffs] to review all of the rules applicable to

default judgment motions and to comply with each of them."  (*Id*.)

Before judgment can be entered for the plaintiff, the SCRA commands that the court

"require the plaintiff to file with the court an affidavit . . . stating whether or not the defendant is

in military service and showing necessary facts to support the affidavit."  50 U.S.C. App. § 521;

*ADI Glob. Distribution v. Green*, No. 20-CV-03869 (AMD)(JMW), 2023 WL 3355049, at *3

(E.D.N.Y. Apr. 24, 2023) (same), *report and recommendation adopted*, 2023 WL 3346499

(E.D.N.Y. May 10, 2023).  There are a few ways to satisfy this requirement.  For example,

"[c]ertification . . . of a defendant's military status can be obtained from the Department of

Defense's Servicemembers Civil Relief Act website . . . ."  *ADI Glob. Distribution*, 2023 WL

3355049, at *3.

Plaintiffs failed to comply with the SCRA the first time they filed their motion for default

judgment because there was no indication whether individual defendant Ray was in military

service.  (*See* DE 14.)  This time Plaintiffs' counsel filed a declaration[1] in support of the instant

---

[1]  A declaration "in writing, subscribed and certified or declared to be true under penalty of perjury," as offered here, suffices in place of an affidavit.  50 U.S.C. App. § 521(b)(4)

motion.  (*See* DE 15-2.)  But the passing perfunctory reference in counsel's declaration that Peter Ray is "not presently in the military" does not cure Plaintiffs' noncompliance with the SCRA. (DE 15-2 at ¶ 6.)  Instead, the statute mandates Plaintiffs provide a declaration setting forth the necessary supporting facts leading to the conclusion that in fact Ray is not currently serving in the military.  *See Uribe v. Nieves*, No. 17-CV-5155 (RRM)(RER), 2018 WL 4861377, at *1 (E.D.N.Y. Sept. 26, 2018) ("The affidavit must provide the specific facts necessary to support the conclusion stated, and may not be based on conclusory statements or on 'information and belief.'"); *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV)(RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012) ("The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered."). The statutory mandate itself insists more than a mere parroting of the language that the defendant is not currently serving in the military is needed. *See* 50 U.S.C. App. § 521.  That is, the statute requires both (i) a statement that defendant is not in military service, and (ii) necessary facts to support that conclusion.  *Id.*

Similar conclusory statements without support in attorneys' affidavits have been held insufficient to comply with the SCRA.  In *Innovative Sports*, the only support for the individual defendant's military status was an attorney affidavit stating in relevant part that to the best of the attorney's knowledge the defendant was not a "person[] in military service or otherwise exempted from default judgment under the [SCRA]."  *See Innovative Sports Mgmt., Inc. v. Triangle Eatery & Bar, LLC*, No. 21-CV-6909 (AMD)(RER), 2022 WL 18151927, at *10 (E.D.N.Y. Dec. 14, 2022), *report and recommendation adopted*, 2023 WL 130835 (E.D.N.Y. Jan. 9, 2023).  The court recognized that "[t]his single reference is insufficient to comply with

8

the Act, as counsel provides no indication for the basis of that knowledge, and fails to show that the requisite investigation into [defendant's] military service was performed." *Id*. As a result, the motion was denied as to the individual defendant. *See id*.

The same result is required here as there is no question that "[t]he court lacks the power to excuse compliance with the statute." *Id*. (quoting *Uribe*, 2018 WL 4861377, at *1); *see also Windward Bora, LLC v. Ortiz*, No. 21-CV-04154 (MKB)(JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022) (same), *report and recommendation adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022); *ADI Glob. Distribution*, 2023 WL 3355049, at *3 (same). There are no facts whatsoever establishing the basis for counsel's naked assertion that Ray is not presently in the military. Therefore, as to Defendant Peter Ray, the undersigned recommends Plaintiffs' motion for default judgment be denied with leave to renew upon proper compliance with the SCRA.

As to A-G Electrical, this deficiency need not detain the Court since the SCRA is inapplicable to corporate defendants. *See Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CIV-5624 (ARR) (VMS), 2020 WL 6370148, at *9 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (only applying service members civil relief act to the individual defendants). Accordingly, the Court finds that Plaintiffs' motion for default judgment is procedurally proper as to Defendant A-G Electrical and turns to the merits of the motion.

**B.  *Default Factors***

In evaluating whether to grant a default judgment, courts consider (1) whether the defendant's default is willful; (2) whether the defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer if the motion for

default judgment is denied. *See Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317 (ADS)(AKT), 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013). *But see Brown v. Gabbidon*, No. 06-CIV-8148 (HB), 2007 WL 1423788, at *4 (S.D.N.Y. May 14, 2007) ("A discussion of prejudice, willfulness and meritorious defenses is required once there is an entry of default or a default judgment and the court considers a request by a defaulting party to vacate that entry pursuant to Rules 55(c) or 60(b).").

Consideration of these three factors counsels toward an entry of default judgment where, as here, Defendant has wholly failed to appear and present any sort of defense, and Plaintiffs are left with no further steps to take to secure relief. *See ADI Glob. Distribution*, 2023 WL 3355049, at *4; *see also Flooring Experts*, *Inc.*, 2013 WL 4042357, at *3 (when a defendant is continuously and completely unresponsive the failure to respond is considered willful), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013); *Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-CV-46 (JS)(AKT), 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012) ("[T]he Court is unable to make a determination whether the Defendants have a meritorious defense since no such defense has been presented to the Court"), *report and recommendation adopted*, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012); *Northwell Health, Inc. v. Northwell Staffing Agency, LLC*, No. 17-CV-1611 (DRH)(AKT), 2018 WL 1525803, at *9 (Mar. 1, 2018) (noting that denying the motion for default judgment would be prejudicial to Plaintiff since "there are no additional steps available to secure relief in this Court"), *report and recommendation adopted*, 2018 WL 1525698 (E.D.N.Y. Mar. 28, 2018) (citations omitted).

**C.  *Liability and Principal Damages***

   i.  <u>Unpaid Contributions</u>

ERISA requires an employer to make contributions to multiemployer benefit plans under a CBA in accordance with the CBA's terms.  *See LaBarbera v. J.D. Collyer Equip. Corp.*, 337 F.3d 132, 134 (2d Cir. 2003); 29 U.S.C. § 1145.  Plaintiffs allege that A-G Electrical is an "employer" within the sections 3(5) and 515 of ERISA, § 1002(5) and 1145.  (DE 1 at ¶ 4.) Plaintiffs allege that A-G Electrical entered into: (1) a CBA with the Pension Fund and the Health Fund; (2) Settlement Agreements with the Pension Fund and the Health Fund; and (3) a Participation Agreement with the Health Fund.  (DE 15-1 at 7; DE 1 at ¶¶ 10, 12, 25, 26, 27.) Plaintiffs further allege that Defendants were required to make health contributions to the Health Fund, and pension contributions to the Pension Fund for the bargaining unit members but failed to meet their contribution obligations pursuant to these agreements.  (DE 1 at ¶ 13, 17, 25, 26, 29.)

   The November 2018 settlement agreement with the Pension Fund reflects that an outstanding balance of $4,140.72 in contributions owed pursuant to the CBA was to be paid to the Pension Fund inclusive of interest.  (DE 15-7.)  The June 1, 2020, demand letter sent to Defendants reflects that $630.34 had been paid, and that balance of $3,510.38 in delinquent contributions remained.  (DE 1 at ¶ 36.)  Plaintiffs provided receipts of the $630.34 payment. (DE 15-8.)  The November 2018 settlement agreement with the Health Fund reflects that an outstanding balance of $72,967.56 in outstanding contributions pursuant to the CBA and the Participation Agreement, inclusive of interest, was to be paid to the Pension Fund.  (DE 15-14.) The June 1, 2020, demand letter to Defendants reflects that $11,097.80 had been paid, and that a

balance of $61,869.76 in delinquent contributions remained.  (DE 1 at 38.)  Plaintiffs provided

receipts of the $11,097.80 payment.  (DE 15-15.)  Further, from January 2020 to March 2020, A-

G Electrical allegedly failed to make $12,496.86 in contributions pursuant to the CBA and

$8,331.24 in contributions pursuant to the Participation Agreement, as reflected in the remittance

reports (DE 15-12; DE 15-19).  *See Sciascia v. Prime Protective Servs., Inc.*, No. 13-CV-0800,

2014 WL 940721, at *7 (E.D.N.Y. Mar. 11, 2014) (finding plaintiffs sufficiently proved

damages for unpaid contributions based on the submission of remittance reports).

 The well-pleaded allegations establish that A-G Electrical breached the CBA as well as

the Settlement Agreements and Participation Agreement.  Accordingly, the Court finds that

Plaintiffs have sufficiently alleged A-G Electrical's liability for unpaid benefits contributions as

follows: (1) $3,510.38 for delinquent contributions pursuant to the Settlement Agreement with

the Pension Fund; (2) $61,869.76 for delinquent contributions pursuant to the Settlement

Agreement with the Health Fund; (3) $8,331.24 for delinquent contributions pursuant to the

Participation Agreement with the Health Fund; and (4) $12,496.86 for delinquent contributions

to the Health Fund pursuant to the CBA.   (DE 15-1 at 7.)

 ii. <u>Withdrawal Liability</u>

 Pursuant to 29 U.S.C. § 1381(a), "[i]f an employer withdraws from a multiemployer plan

in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the

amount determined under this part to be the withdrawal liability."  29 U.S.C. § 1381(a).  Under §

4203(a) of ERISA, 29 U.S.C. § 1383(a), "a complete withdrawal from a multiemployer plan

occurs when an employer-- (1) permanently ceases to have an obligation to contribute under the

plan; or (2) permanently ceases all covered operations under the plan."  29 U.S.C. § 1383(a).

"Following withdrawal from a plan, the fund is vested with authority to determine the amount of withdrawal liability. It must then notify the withdrawing employer of its withdrawal liability, set a payment schedule, and formally demand payment." *Gesualdi v. Seacost Petroleum Prod., Inc.*, 97 F. Supp. 3d 87, 97 (E.D.N.Y. 2015) (quoting *Burke v. Hamilton Equip. Installers, Inc.*, No. 02-CV-519, 2006 WL 3831380, at *4 (W.D.N.Y. Oct. 16, 2006), *aff'd*, 528 F.3d 108 (2d Cir. 2008)).  "[T]he notice must include the amount of the liability, a schedule for liability payments, and a demand for payment in accordance with the schedule." *Amalgamated Lithographers of Am. v. Unz & Co. Inc.*, 670 F. Supp. 2d 214, 221 (S.D.N.Y. 2009) (citing 29 U.S.C. § 1399(b)(1)).

Once an employer receives notice it has 60 days to begin payment in accordance with the payment schedule irrespective of whether it requests review of the decision. *Id*. at 222 (citing 29 U.S.C. § 1399(c)(2)).  An employer is in "default" in making payments pursuant to the payment schedule upon: "the failure of an employer to make a scheduled payment, when that failure is not cured within 60 days after written notification from the plan of the failure; or 2) any event defined in rules adopted by the plan that indicates a 'substantial likelihood' that the employer will be unable to pay withdrawal liability." *Id*. (citing 29 U.S.C. § 1399(c)(5)(A) and (B)). Upon default, "the plan may require immediate payment of the entire unpaid amount of the employer's withdrawal liability, plus accrued interest on the total outstanding liability from the date of the first scheduled payment that was not timely made." *Id*. (citing 29 U.S.C. § 1399(c)(5)).

Disputes related to withdrawal liability assessments are settled through arbitration in the first instance, and that process must be initiated by the earlier of 60 days following notification to the employer regarding the post-review decision or 180 days after the employer requests review.

*Id.* "Failure to demand arbitration within the statutory time frame bars the employer from contesting liability for the amount demanded." *Id.*

Here, Plaintiffs allege that on or about June 1, 2020, defendants "permanently ceas[ed] all covered operations under the Pension Fund." (DE 1 at ¶ 14.) Plaintiffs determined they were entitled to $135,646.00 in withdrawal liability principal. (DE 1 at ¶ 44.) By letter dated June 1, 2020 (DE 15-9), Plaintiffs sent a letter to Defendants "notify[ing] [them] of [their] withdrawal liability, set a payment schedule, and formally demand payment." *See Gesualdi*, 97 F. Supp. 3d at 97 (citations omitted). Defendants did not initiate payments within 60 days, and in fact, did not make payments at all. (DE 1 at ¶ 43.) The withdrawal liability amount was calculated by the Pension Fund's actuary (DE 15-18), which is sufficient to establish the amount of withdrawal liability, even without an explanation as to the method utilized for calculating the amount. *See Daniello v. Planned Sys. Integration Ltd.*, 2009 WL 2160536, at *5 (E.D.N.Y. July 17, 2009) (finding a letter by the Fund's actuary stated the withdrawal liability amount calculated under the "presumptive method" is "statutorily sufficient to permit an award of the damages").

Thus, the Court finds that Plaintiffs have sufficiently alleged withdrawal liability and adequately supported their $135,646.00 in damages.

### iii. <u>Personal Liability of Peter Ray</u>

In the event Judge Azrack disagrees with the undersigned's recommendation that the instant motion be denied as to Ray for Plaintiffs' failure to comply with the SCRA, the undersigned recommends a finding that Ray is personably liable for a breach of his fiduciary duties.

Plaintiffs argue Peter Ray is personally liable for the breach of his fiduciary duties because under 29 U.S.C. §§ 1109(a), 1132(a)(2), civil actions are permitted against plan

fiduciaries in their personal capacities for breach of their fiduciary duties.  29 U.S.C. §§ 1109(a), 1132(a)(2).  To show that an individual is an ERISA fiduciary, a plaintiff must establish "both that (1) the unpaid contributions were plan assets and (2) [the particular individual] exercised a level of control over those assets sufficient to make him a fiduciary."  *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009)."   "[I]n the absence of provisions to the contrary in the relevant plan documents, unpaid contributions are not assets of the plan."  *Id*.

Here, the Article 1, Section 10 of the Trust Indentures expressly state that "Employer contributions are considered assets of the Fund and title to all monies paid into and/or due and owing to the Fund shall be vested in and remain exclusively an asset of the Fund."  (DE 15-10 at 5; DE 15-17 at 9.)  Thus, the delinquent contributions are fund assets.  *See Trustees of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(k) Sav. Plan v. J.& A. Contractors Corp.*, No. 20-CV-1189 (ARR)(LB), 2021 WL 7159908, at *17 (E.D.N.Y. Oct. 28, 2021) (finding unpaid contributions to be fund assets where the relevant agreements provided that "the assets of that plan include sums of money that have been or will be paid or which are due and owing to the Fund by the Employees as required by the Collective Bargaining Agreements."), *report and recommendation adopted*, No. 20-CV-1189 (ARR), 2022 WL 42524 (E.D.N.Y. Jan. 5, 2022).

Moreover, an individual possesses "discretionary authority over the unpaid contributions on account of [their] role as president, CEO, owner, and the person who approved and signed documents related to contributions to the funds."  *See Trustees of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(K) Sav. Plan v. Temperini Mech., Inc.*, No. 12-CV-05646 (ILG), 2014 WL 2644774, at *4 (E.D.N.Y. June 13, 2014) (collecting cases).  Plaintiffs aver that Ray signed the CBA and

relevant agreements, was the president of the corporation, and had full control and authority over both the contributions and submission of those contributions.  (*See* DE 15-6 at 14; DE 15-7 at 4; DE 15-11 at 1; DE 15-14 at 4.)

Accordingly, *if* compliance with the SCRA is shown, Plaintiffs have sufficiently established Defendant Peter Ray's individual liability.

**D.  *Interest, Liquidated Damages and Attorneys' Fees***

Pursuant to ERISA, if an employer fails to make contributions in accordance with the CBA, the court must award the plan damages as follows:

(A) the unpaid contributions;

(B) interest on the unpaid contributions;

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions or

(ii) liquidated damages provided for under the plan in an amount not in excess  of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A);

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant; and

(E) such other legal or equitable relief as the court deems appropriate.

*Gesualdi v. Seacost Petroleum Prod., Inc.*, 97 F. Supp. 3d 87, 97 (E.D.N.Y. 2015) (quoting 29 U.S.C. § 1132(g)(2)).

Further, "ERISA provides that [i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of Section 1145 of this title)." *Id.* (internal quotation marks omitted).  Thus,

withdrawal liability "damages are to be calculated 'in the same manner as' unpaid benefit contributions." *Id*. (quoting 29 U.S.C. § 1451(b)).

i. Interest

First, Plaintiffs correctly argue that under ERISA, they are entitled to interest on the unpaid contributions at the rate determined by the Pension Fund Trust Indenture (DE 15-10) and the Health Fund Trust Indenture (DE 15-17). Plaintiffs are entitled to interest under ERISA, and interest is "determined by using the rate provided under the plan." *See* 29 U.S. Code § 1132(2). Pursuant to the Trust Indentures, unpaid contributions entitle Plaintiffs to interest calculated at 1.5% per month and 18% annually from the date the payment was due to when payment is made. (*See* DE 15-10 at 15; DE 15-17 at 19-20.) This periods runs to the date the instant motion was filed on December 21, 2022. for the purposes of calculating payments presently overdue.

A-G Electrical defaulted on the Settlement Agreement with the Pension Fund and the Health Fund when it failed to make its next installment payment on January 10, 2020, and thus, owe 35 months of overdue interest. (DE 15-2 at ¶¶ 14, 21.) As stated in the affidavit provided by counsel, at the interest rate of 1.5% per month, for the 35 months of delinquent contributions, Plaintiffs are owed as follows: (1) $1,842.75 in interest to Pension Fund on monies owed pursuant to Settlement Agreement (*Id*. 15-2 at ¶¶ 13-14); and (2) $32,481.62 in interest to Health Fund on monies owed pursuant to Settlement Agreement (*Id*. at ¶¶ 23-25). Further, A-G Electrical is delinquent on contributions to the Health Fund pursuant to the Participation Agreement as of March 2020 for amounts due for from January 2020 to March 2020. (*Id*. at ¶ 29.) Thus, A-G Electrical owes $10,934.75 in interest to Health Fund for delinquent contributions based on the same interest rate for 33 months. (*Id*. at ¶¶ 32-33.)

Second, Plaintiffs assert that on the issue of withdrawal liability the Pension Fund is also entitled to interest at a rate of 1.5% per month or 18% per year pursuant to the Trust Indenture (DE 15-10 at ¶ 15). Plaintiffs set forth that the A-G Electrical was notified of its $135,646 withdrawal liability on June 1, 2020 and failed to respond to the demand. (DE 15-2 at ¶ 39.) As stated in the affidavit provided by counsel, interest calculated, at a rate of 1.5% per month for 30 months, results in a monthly total of $2,034.69 and total interest amount of $61,040.70. (DE 15-2 at ¶¶ 39-40.)

Accordingly, Plaintiffs have sufficiently supported their request for interest on unpaid contributions and withdrawal liability. *See Trustees of the Loc. 807 Lab. Mgmt. Health Fund v. Express Haulage Co.*, No. 07-CV-4211 (NG)(CKO), 2008 WL 4693533, at *8 (E.D.N.Y. Oct. 23, 2008) ("The Trust Agreement makes clear that defendant owes interest on its withdrawal liability at 18% per annum . . . ."); *Daniello*, 2009 WL 2160536, at *6 ("Here, the plan provided (in the Trust Agreement) that interest would accrue on unpaid contributions at the rate of 18% per annum."). And interest should continue to accrue at the rate of 1.5% per month until the date judgment is entered. *See Gesualdi*, 97 F. Supp. 3d at 102 ("And, because the principal amount remains outstanding [interest] . . . shall continue to accrue for each day until judgment is entered.").

ii. Liquidated Damages

Plaintiffs aver that they are also entitled to liquidated damages. Plaintiffs are entitled to additional damages in an amount equal to the greater of "(i) the interest charged on the unpaid contributions, or (ii) a liquidated damages award equal to 20 percent of the unpaid contributions." *See Gesualdi*, 97 F. Supp. 3d at 104 (citing 29 U.S.C. §§ 1132(g), 1451(b)).

Article IV Section 5 of the Trust Indentures provides for the collection of liquidated damages in an amount (1) equal to the greater of the interest at the rate of 1.5% per month or 18% per year on the delinquent contributions and/or withdrawal liability; or (2) an amount not to exceed 20% of the delinquent contribution and/or withdrawal liability.  (DE 15-10 at 15-16; DE 15-17 at 19.)

Plaintiff's counsel provided calculations of the interest owed compared to 20% of the delinquent contributions/withdrawal liability and based on the Court's review, in all instances the interest is greater than the percentage.  (*See* DE 15-2 at ¶¶ 17, 27, 35, 42.)  Accordingly, Plaintiffs are entitled to liquidated damages in the same amounts as the interest, which are as follows: (1) $1,842.75 to the Pension Fund for contributions owed pursuant to Settlement Agreement (DE 15-2 at ¶ 17) ; (2) $32,481.62 for liquidated damages to the Health Fund for contributions owed pursuant to Settlement Agreement (*Id.* at ¶ 27); (3) $10,934.75 for liquidated damages on delinquent contributions from January 2020 through March 2020 owed to the Health Fund (*Id.* at ¶ 35); and (4) $61,040.70 in liquidated damages on the withdrawal liability to the Pension Fund  (*Id.* at ¶ 42).

   iii.  <u>Attorneys' Fees and Costs</u>

Plaintiffs seek attorneys' fees in the amount of $5,880 as well $637.50 in costs totaling $6,517.50.  (DE 15-2; 21.)  ERISA expressly provides for a mandatory award of "reasonable attorney's fees and costs of the action, to be paid by the defendant[.]"  29 U.S. Code § 1132(g)(2)(D); *see Lanzafame v. L & M Larjo Co.*, No. 03-CV-3640, 2006 WL 2795348, at *6 (E.D.N.Y. Sept. 26, 2006) ("Section 1132(g) mandates an award of reasonable attorney's fees in ERISA actions brought by fiduciaries to enforce the terms of a collectively bargained agreement.").

This Court "enjoys broad discretion in determining the amount of a fee award." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 307 (2d Cir. 2011). When considering applications for attorneys' fees, courts apply the lodestar method. *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21-CV-3284 (ENV)(LB), 2022 WL 2467541, at *4 (E.D.N.Y. Apr. 14, 2022). The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," "creates a presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). In utilizing the lodestar approach, courts multiply the number of hours spent on a case by an attorney's reasonable hourly rate. *Millea*, 658 F.3d at 166.

Plaintiffs' counsel Sheri D. Preece has provided billing records with an itemized breakdown of hours and descriptions of each task conducted. (*See* DE 15-21.) Those records reflect that Preece worked 16.8 hours on this case at a rate of $350 per hour. (*Id.*) The hours expended are reasonable for this case. *See, e.g.*, *Gesualdi v. Bestech Transp.*, *LLC,* No. 14-CV-1110 (JS)(ARL), 2022 WL 866853, at *5 (E.D.N.Y. Mar. 23, 2022) (finding 22.3 hours reasonable in the ERISA default judgment context).

Further, Preece's affidavit reflects that she is a named partner at McCarthy and Preece, PLLC with over a decade of experience with "labor law and ERISA law, representing unions, multiemployer welfare fund[s], and multiemployer pension funds." (DE 15-2 at ¶¶ 43-44.) The Court finds that considering the hourly rates found reasonable in ERISA actions in this district, Preece's hourly rate of $350 is reasonable in light of her background and experience. *See Gesualdi*, 2022 WL 866853 at *3 ("Courts in this district typically award hourly rates ranging from $300 to $450 per hour for partners in ERISA cases") (collecting cases). At a $350 hourly

rate and 16.8 hours, the total lodestar is $5,880, which is precisely what Preece requests, and thus, is reasonable.

As to costs, "[t]he party seeking to recover costs 'bears the burden of adequately documenting and itemizing the costs requested.'" *Id*. (quoting *Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-CV-3549, 2020 WL 5899881, at \*14 (E.D.N.Y. Mar. 12, 2020)).  Preece requests $6,517.50 in costs comprised of $400 for the filing fee and $237.50 for the service of process fee.  (DE 15-2 at ¶ 46.)  "Precedent supports the inclusion of filing fees and the costs of process service as part of the damage award in an ERISA action."  *See Annuity, Pension, Welfare, Training & Lab. Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Engineers , Loc. 14-14B, AFL-CIO by Christian v. Coastal Env't Grp. Inc.*, No. 18-CV-5773 (AMD)(ST), 2019 WL 4603805, at \*15 (E.D.N.Y. Sept. 5, 2019), *report and recommendation adopted*, 2019 WL 4602851 (E.D.N.Y. Sept. 23, 2019).  Preece has provided documentation to support the service of process fee, which is adequate to support her request (*see* DE 15-16 at 1-2).  *See id*.  And the billing invoice provided by Preece notes the $400 filing fee, which is sufficient. *See id*. (noting that the Court can simply "take[] judicial notice of the required $400.00 filing fee").

Accordingly, the undersigned recommends awarding Plaintiffs $6,517.50 consisting of $5,880 in attorneys' fees and $637.50 in costs.

## CONCLUSION

For the reasons stated above, the undersigned respectfully recommends Plaintiffs' motion for default judgment be granted in part and denied in part as follows.  The motion be denied as to Defendant Peter Ray with leave to renew given Plaintiffs' continued failure to comply with the SCRA.  The motion be granted as to A-G Electrical as follows: (1) the Health Fund be awarded the amount of $169,530.60 for delinquent contributions, liquidated damages, and interest; (2) the

Pension Fund be awarded $264,923.28 for delinquent contributions, withdrawal liability, liquidated damages, and interest; and (3) the Health Fund and the Pension fund collectively be awarded $6,517.50 for attorneys' fees and costs.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Plaintiffs are directed to serve a copy of this Report and Recommendation on Defendants via first-class mail and via email and promptly file proof of service on ECF within two business days. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:     Central Islip, New York
           July 19, 2023

RESPECTFULLY RECOMMENDED,

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge